Our third case for this morning is Sheet Metal Workers, Local Union 20, against Horning Investments. Ms. Payoff. Good morning. May it please the court, my name is Kira Payoff and I represent the Plaintiff Appellant Sheet Metal Workers, Local 20. Local 20 is seeking reversal of the district court's grant of summary judgment in defendant Horning's favor. The facts of this case are not overly complicated, but Local 20 argues at a minimum there's an issue of fact regarding whether Horning held the requisite knowledge of the falsity of its claims and statements for purposes of FCA liability. So your client seems to have a very strange idea about how you trace the value of this $5 per hour which I take it goes to the trust that they, it's essentially an ERISA welfare fund. So not everybody is going to consume benefits from such a fund. Somebody might be lucky and go a whole year without any medical problems or dental problems or whatever other things are in there and as I understand it they came up with this $5 per hour for that part of the fringes as a good-faith estimate of what needed to be in there adequately to fund these benefits. So is it your view that you've got to trace right back to each employee $5 times 40 hours a week times 50 weeks a year or what is it that you think? Yeah well there was no calculation done to determine what benefits Horning actually provided to the employees and so there's no good-faith calculation as to what that $5 per hour represents. They don't think so. They say that you know they talk to their accountants and that they actually make contributions to this fund from time to time to keep it liquid or actuarially sound or whatever so and once the contribution has been made to the fund I take it there's no way that they can recapture those $5 per hour per employee contributions they're just there in the fund hence the tax treatment of the fund. Yeah the point though is that the benefits that are provided to the That's what I'm trying to get at. How do we know that? I mean for the employee who's well all year long and who never goes to a doctor a single time I suppose you could say he's not getting any benefit from that $5 per hour but the person you know who needs extensive cancer treatment over the course of that year is probably consuming vastly in excessive whatever he put in but that's the nature of these relatively self-insured I guess they up to the first $30,000 per employee they have to pay themselves. Is that the way the insurance works? They have a stop-loss policy is my understanding but there are several employees that do not participate. Do they want their $5 back at the end of the year or do they not want it to be deducted during the year? Well this case is about the false certification that Horning made claiming that it provided benefits in the amount of $5 per hour for each employee. But answer my question there are some some of these workers do not derive any benefit from the trust and yet it still costs them $5. My question is do they want to be excused from the $5 at the beginning of the year or do they want to get a refund at the end of the year if they haven't used any of these benefits? Well for the employees who don't participate in the medical insurance plan and they get no benefits either this year or next year or the Horning should have made up the difference either take that $5 an hour and put it in their 401k or give it to them in direct compensation. But we're here on behalf of the United States because Horning falsely certified that it paid the appropriate Davis-Bacon wage rate to all of the employees. So the ground that the district court goes off on isn't whether it's a false certification. The district court said let's assume it was false but that the knowing element of the False Claims Act isn't met because under the circumstances with the advice of their accountants with the way this was structured there was no reason they would have known that this structure this kind of general trust fund that's created I guess some people call it a VEPA which I didn't know was a thing was there was no knowledge that this wouldn't have been an acceptable way to give the fringe benefits that Davis-Bacon requires. Yeah it's our position in this appeal that the district court erred in finding that there was no issue of fact as to the knowledge element. Well wait a second they must have known that some of these workers don't have company benefits. That's correct that's our contention that for the the employees that didn't even participate in the plan they knew they were not getting the benefit of the $5 per hour. For employees that were in the plan there's a question of fact as to what exactly their accountants told them. This is a weaker case than the people who were either probationary or who for some other reason I don't know why you wouldn't have been in the plan if you weren't probationary but apparently some people I guess opted out somehow. They might be spouses. Yeah so for those people you know if you're certifying you're paying the full fringes I guess for them as you said it either should have gone to the 401k or they should have gotten paid five dollars more per hour as their upfront wages is your position. That's doesn't Davis Bacon you know have some remedy provision. They could have the employees could have filed an action to recover what they were not provided the five dollars per hour either put in 401k or direct compensation but in this sense the False Claims Act is a means for policing these type of violations where the employees don't know that they're not being paid correctly. Will there be some damages or fines or something under False Claims Act you wouldn't have under Davis Bacon? Yes there's damages and then there's treble damages and there's also fines that can be assessed against defendant for violating the False Claims Act. But the treble damage and so on, will all that go to the workers or to the government? It will go to the government who decides. The government gets everything from the suit? Pretty much the government gets to decide what to do with the money whether to take the money back. Forgetting the trebling, is it it's practice to reimburse these people who shouldn't have had to contribute, shouldn't have had the five dollars deducted? I'm unaware of cases where the government has taken the money and what they've done with the money at the end of the case. So let me ask you a question about these probationary people. Does the record show what would happen if somebody successfully completes the probationary period and during the probationary period they had gone to see a doctor? Can they, does their coverage relate back to the first date of employment or does it kick in only after the probationary period is over? There's no evidence in the record what happens in that instance. The one probationary employee that we had looked at, Mr. Nicholas Kent, he actually left the company before the end of his probationary period anyway. I mean because if it relates back then those people at least are paying five dollars an hour, you know, almost as an option. You know, they might get the benefit of it should they last beyond the probationary period. Yeah, in this case though the the premiums for the insurance coverage are thirty two dollars a week and five dollars an hour if you're working 40 hours is well over that thirty two dollars a week. This company also only in its discretion provides vacation time and most of the employees don't get any When you say the premiums are $32 a week, that seems very low for an insurance plan that covers medical, dental, all these other things that this plan covers. Yes, in the appendix with the bills for the insurance coverage, if you look at an when you multiply that monthly amount times 12 and divide it by 52, it's somewhere between 32 and 39 dollars a week and for employees that don't work on prevailing wage projects, the company charges them $32 a week for the insurance benefits. The question though I suppose whether there's some subsidy embedded in that charge. They're often, I mean there might be, might not. Anyway, if you would like to say rebuttal time you may. I would. Okay, thank you. Mr. Finkley? Good morning, Your Honors, and may it please the court, my name is Jack Finkley, attorney for Horning Investments, and I'd like to start with that five dollar amount. That five dollar amount that the word deduction has been used for is something in addition to the cash wages that employees would have received. Right, but Davis-Bacon requires that. Davis-Bacon says cash wages and it has a separate part for fringe benefits. It does have a separate fringe benefit amount. And the five is in there, in the fringe benefit amount, right? That is correct, five is part of it. There is also a contribution to a 401k fund. So how do you justify the five dollars for people who are non-participants, who actually not receive any payout from this fund, who either have opted out because their for whatever other reason, maybe they're probationary and you don't let them vest? I think, don't I remember that they vest for certain purposes after 90 days and for some other purposes after a little longer? There are a few different vesting periods. Right, so they get this five dollars per hour attributed to fringe benefits when in fact they're not, they are by law, they are by policy not going to get any fringe benefits. Well, they are participating in an ERISA plan. Why, since they're not in the plan yet until they vest? Correct, but So how can you say they're in the plan when you've just agreed they're not? Because it is an ERISA plan that will provide them benefits as soon as they are eligible. It's not a situation where they're not going to be eligible. It's a plan. I thought some of them had decided to have their own, they want to be part of the plan. So you might be married to someone who had a very good plan with spousal benefits so you don't want to be paying for something that you're not going to use. The only person I recall being identified is the individual who did not complete his probationary period. Could you speak up, I can't hear you. The only individual I recall in the record being identified, you know, in our briefing has been the individual who did not complete his probationary period. He worked for Horning for a few weeks and contributions were made. He was paid the appropriate cash rate. He did receive 401k contributions and he physically, when he left, took those with him. So a person like that though, somebody for the first 90 days when they may never even stay with Horning, would much rather have a five dollar supplement to their hourly cash rate and then the 401k and then as soon as they've vested then the five dollars starts going into the plan, the trust if you will. And if you're saying they're getting the benefit of those five dollars only because what you mean is they might get the benefit of the five dollars if they stay and if that's a rather different statement. Because they would be entitled to benefits, you know, once the vesting period is there and... Why doesn't that mark the time that they're required to start contributing to the plan? That's the question. And that's something that Horning, when they were working on implementing this, relied on their accountants to tell them. What does that mean, rely on? Who are these accountants? They were the company's accountants. Pardon? It was an accounting firm. What is the accounting firm? The accounting firm is Somerset. Is what? Somerset. Is this a big firm? It is a reasonably sized firm. It's not one of the big three in Indiana but it is a, I'd say, a mid-sized firm. So is it your proposition that anything the accountants say is you can rely on? When the accountants come to them with the specific advice on how to... Were the accountants available, that there were some people who were not getting benefits? I'm sorry, I don't understand your question, Judge. Well, did Somerset know that there were some people for whom the five dollars that being deducted from their wage was not buying anything for them? The record does not indicate one way or the other. Well, isn't that critical? I'm not sure it is critical because the issue is whether Horning knew or... Well, the question is what did you tell Somerset? What was Somerset told? That everybody gets benefits and they all have to and you want Somerset to figure out the, I don't know, present value of those benefits and then Horning would deduct that from their wage. The record just doesn't indicate... Pardon? The record just does not indicate... Is that critical? What if it just said, you know, we have this benefit plan and we want you to figure out, you know, what's the present value of these benefits without telling Somerset that actually some of these people don't get any benefits. As far as Somerset is involved, yeah, I don't know what they knew. It's what's critical is whether... No, what's critical is what you told them because that's the basis on which they make their calculations. So, if you tell them everybody gets benefits, they'll say, well, everybody should have a $5 deduction from his hourly wage. So, if this were being handled, I mean, to the extent you're relying on the advice of the accountants for the knowing element of this thing, if this were being handled in a way analogously to advice of counsel, we have said, you know, among other things, you've got to show that before you took an action, you, among other things, for the purpose of getting advice, you made a full and accurate report of all material facts that you knew and then you acted strictly in accordance with the advice. But it's the full and accurate report that I think Judge Posner is getting at. The accountant's advice is only going to be as good as the information and the description that the company gave the accountant. And if the accountants don't know critical facts, then it's a little hard to say this is just good faith reliance, whether it's negligence, whether it's ostrich-like behavior, or it seems that the company must have known that some people never get benefits, and the company must have known who was coming to the trust for payouts. The, you know, the trust itself has the benefit plans attached to it, so the accountants had to know what the benefit plans were, and it's from Horning's point of view, they asked the accountants for help on a basis that included compliance. So were the accountants informed that some of these people didn't get benefits? That I cannot say one way or the other. Well, suppose they were informed that some of these people don't get benefits, and the accountants say, oh, it doesn't matter, it'd take $5 off all of them. Would you refer, would the company be allowed to rely on that? I think it would depend on what the advice was. In your specific scenario, if Horning is not experienced in compliance with trust issues and Davis-Bacon Act issues, when the accountant says, I am experienced in that, and I'm telling you, don't worry about that because, for instance, the Department of Labor has said, if someone's not eligible for a probationary period, there are circumstances where contributions made still comply with the Davis-Bacon Act. Did the union complain to the Department of Labor? Not that I'm aware, because no Department of Labor representative came to. Did Horning ask the Department of Labor for its view about whether this was permissible? No, not, the record does not. This is all very peculiar in a world in which the Department of Labor is principally responsible for Davis-Bacon enforcement, that nobody seems to know or care what this transaction is. Well, I know the Department of Labor had the opportunity to intervene in this case. Of course it had the opportunity. They don't intervene and take over most of these kinds of suits, most ketone suits. That being said... Did they write a letter to the district court saying we're not intervening for a particular reason?  So it would be really, it would have been really nice for somebody, one side or the other, to ask the Department of Labor, because this is really a dispute about the Davis-Bacon Act. What does the Davis-Bacon Act require? It'd be nice to know. And we did file a motion to dismiss at the beginning of the case to have the Department of Labor, or saying this was more properly in front of the Department of Labor. That was overkill though, in my view. It's not that there's primary jurisdiction in the Department of Labor. It's just that there are administrative procedures that allow you to go to the department to get advice. The department, you know, is there in part for that reason. So I think... Send them a letter saying, this has been our practice. It's been questioned. We want to know whether we should do this in future contracts. The first notice that we had of any question was, however, almost a year after the suit was filed. No, look, you send them a letter and say, this is our practice. We anticipate having future contracts. We want to know whether we should do this or not do this. It'd be a simple thing to do. I agree it would be a simple thing to do. At the same time, Horning was not aware that any of the contracts or anything that they were doing was subject to a problem or a false contact violation. Well, here you are spending a lot of money in litigation. An alternative would have been to get an administrative opinion. Of course, I have the same question for the union. Why are you spending a lot of money if you're so sure it violates the Davis-Bacon Act? Maybe the Department of Labor would just be the white horse and that would be the end of this. Perhaps, Your Honor. And in that same vein, Your Honor's asked appellants whether, you know, what the employees want and whether they want their $5 back. The union does not know because they are representing, as a relater in this case, they are not the certified representative of the employees at Horning and they've never been the certified representative of the employees at Horning. And what I would like to wrap up with, if Your Honor's do not have any more questions, there's no case in the Seventh Circuit or otherwise that has parched a fringe benefit trust and the administration of it and whether people get benefits for a false claims act violation. Department of Labor declined to intervene in this case and the trial court went through a reasoned analysis and a full analysis and came to the conclusion that Horning was due summary judgment as a matter of law. The Horning believes the trial court was correct and wanted this court to affirm the trial court. Are there any other questions? Apparently not. Thank you very much. How much time does she have? Yes, so you've got some time if you'd like to respond to anything. Yes, Your Honor, thank you. First, I'd like to address the statement that the only individual that was identified as not getting benefits was Mr. Kent, who didn't make it through his probationary period. In our briefing, we've identified a Mr. Ramirez, a Mr. Marquez, and Mr. Sandler, who also did not get benefits and it is my understanding that they passed their probationary period. I don't know why they didn't participate in the health plan. Perhaps their spouse had health insurance or whatever. So there is no broader guidance from, I had to Google this, which I probably shouldn't even confess to, but all of a sudden in Horning's brief, I ran across the IRS approving the use of a VEBA, Voluntary Employees Beneficiary Association, Google tells me this means. So if they're common enough to be capable of Googling, is there any guidance from the department about how they need to be structured in order to comply? Because I understand actually what we're talking about is there's a certain amount of cash wages per hour that these different trades get and then there's a benefit beyond that, the fringe benefit, which is partly a 401k contribution and partly this mandatory contribution to this trust. And for people who aren't participating in the trust, we aren't so much talking about a deduction from their wages as they're getting the $5 in some other format, either through an enhanced 401k contribution or higher cash wages. Is that right? For the individuals who do not participate. Who are non-participants, yeah. The $5 an hour gets taken away from them. Only in the sense that it goes into the trust, but they're never going to get any benefit out of the trust. So you're saying they should get that $5. It shouldn't be paid into the trust for them. It should be distributed to them in some other manner that they will be able to enjoy. That's correct. Because under the Davis-Bacon Act, if you only pay the direct wages that is set, you actually have to provide the fringe benefits in the amount that the wage determination says. If you don't, you have to make it up in direct compensation. You have to give them more pay if you're not giving them the benefits. And so these VEBA trusts, while- Presumably if the employees in the first 90 days don't pay into this trust, then the trust has less money available for the other employees. And since only employees benefit from the trust, how can that help employees as a whole? Well, the employees, it's not just the employees that are benefiting from the trust. Horning has used their trust to pay for a lot of administrative costs, but we're not arguing about- That's beyond the scope of this appeal, though, as you have said. We're not arguing about that. But the individual employee has to get the fringe benefits in the amount set by the Davis-Bacon Act, each individual employee. So the union's objective in this case is to get more cash for people in their first 90 days at the expense of lower fringe benefits for everybody after 90 days? No, because if- If there's less money in the trust, there has to be lower fringe benefits for the vested employees who are the exclusive beneficiaries of the trust. That's just a question of making sums come out right. Well, but if the amount of fringe benefits that are being paid out through the trust are $5 per hour for each employee- But it won't be, ever. I mean, it's functionally insurance at that point. And some people, that's what I was trying to get at. Some people are going to have high payouts. Some people are going to have zero payouts. But the fact that you're effectively insured gives you a certain peace of mind and you know that whatever comes along will be covered. But you're not going to see a dollar-for-dollar payout for the employees if this trust is covering what I understand it does, which is the medical, dental, what have you, those kinds of things. So I think you can't assume a direct payout dollar-for-dollar. Right, but if the calculation were done to figure out the benefits that are available to the employees to use and that equaled $5 per hour, then there would be money in the trust for them. But in this case, they didn't do any calculation. Nobody did a calculation. And Horning is relying on advice of accountants. But the testimony on that is the accountants never talked about any projects. They never talked exact dollar amounts. And they just gave a rounded figure that Mrs. Moore then picked, okay, $5 an hour into trust, and then the rest goes into 401k or whatever. Okay, you need to wrap up. Thank you very much. Thanks to both counsel. We'll take the case under advice.